IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARY B. SAUNDERS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 10-7203 |
| BOROUGH OF AMBLER, et al. | : | |

### **MEMORANDUM**

Ludwig, J.                                                           August 22, 2012

This is a civil rights case. 42 U.S.C. § 1983. Jurisdiction is federal question, 28 U.S.C. § 1331. On December 2, 2010, plaintiff Gary B. Saunders commenced this action by filing a complaint in the Court of Common Pleas of Montgomery County, and defendants[1] removed the action to this court. Discovery is complete, and defendants move for summary judgment, which will be granted for the following reasons.[2]

---

[1] Defendants are the Borough of Ambler, Detective Jeff Borkowski and Chief William Foley (Sergeant Foley at the time of the events of plaintiff's claim).

[2] Under Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." Grosso v. Univ. Pittsburgh Med. Ctr., 2012 WL 787481, at *9-10 (W.D. Pa., filed Mar. 9, 2012), citing Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007). "In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts in favor of the nonmoving party." Id. (citations omitted).

The complaint consists of the following five counts: violation of plaintiff's right to be free from illegal search and seizure under the Fourth and Fourteenth Amendments and § 1983 (Count I); false arrest in violation of plaintiff's Fourth Amendment rights (Count II); state law conspiracy (Count III); violation of plaintiff's Fourth and Fourteenth Amendment rights (duplicative of Count I) (Count IV); state law claims - false arrest, false imprisonment, illegal search and seizure, abuse of process and malicious prosecution (Count V).  See complaint (docket no. 1); and June 22, 2011 order granting in part defendants' motion to dismiss plaintiff's complaint (docket no. 17).

The gravamen of the complaint is that the individual defendants illegally obtained warrants for blood samples from plaintiff to determine his involvement in the robbery of an Ambler convenience store and, as a result, filed charges against him.

The summary judgment record shows the following:[3]

On December 31, 2006, at about 9:50 a.m., an armed robbery occurred at the BP station at 90 West Butler Avenue in Ambler, PA. Complaint, ¶ 6. Defendant Borkowski became involved in the investigation

---

[3]The summary judgment record includes the pleadings, deposition testimony, and affidavits.  It also includes documents produced in discovery - police reports, witness statements, affidavits of probable cause submitted and warrants issued, and hearing transcripts.

the next day. Borkowski deposition testimony, at 9, Exhibit G to defendants' memorandum. He sent to the Bethlehem state police lab items of physical evidence obtained earlier - a motorcycle helmet, a pair of white gloves, a jacket a pair of boots and a pair of pants. Id. at 10-11. He reviewed statements given by Ken Huxley, an employee of the convenience store at the time of the robbery,[4] and Mia Hatcher, who met plaintiff in the vicinity of the robbery shortly after it occurred.[5] Id. at 12. He learned that Ambler Police Officer Chad Cassel had seen plaintiff coming from the SEPTA parking lot a short distance from the crime scene a short time after the crime, wearing a black knit cap and a black leather jacket. Complaint, ¶ 12. Borkowski was aware that plaintiff had a prior history of robbery. Borkowski N.T., at 13-14.

On January 3, 2007, Borkowski and Foley interviewed plaintiff at 1221 Bainbridge Street, in Philadelphia, a halfway house where plaintiff was then living. Complaint, ¶ 17. At that time, plaintiff was in the custody of the Pennsylvania State Corrections Department as a pre-release inmate.

---

[4] According to Huxley, the suspect was wearing a full face motorcycle helmet, tan quilted jacket, red turtleneck, blue sweatpants, white gloves and tan work shoes. Statement of Ken Huxley, Exhibit B to defendants' memorandum. The clothing was recovered by police behind the BP station. Complaint, ¶ 10. Huxley also stated that the suspect initially sounded Hispanic, but in a subsequent affidavit noted that the suspect spoke perfect English during the robbery. Affidavit of Ken Huxley, ¶ 5, Exhibit D to defendants' memorandum.

[5] According to Hatcher, Saunders was coming from the SEPTA station when she met him. Statement of Mia Hatcher, Exhibit B to defendants' memorandum.

Saunders deposition testimony, at 111-12, Exhibit C to defendants' memorandum.[6] When plaintiff asked to call his sister about hiring an attorney, the police told him he did not need one because he was not under arrest. Id. at 50-51. Both Borkowsi and Foley interviewed plaintiff. Foley asked plaintiff for an account of his activities on December 31, 2006, and if he had committed the robbery. Plaintiff denied having done so. Id. at 51; Borkowski N.T. at 18. The interview lasted over an hour. Saunders N.T. at 52.

At some time after the interview, Borkowski learned that DNA had been recovered from the glove retrieved following the robbery. Borkowski N.T. at 19-20. The state police told him it would need to obtain a blood sample from plaintiff to determine whether he could be excluded as a suspect. Id. at 20-21; 28. The next day, Borkowski applied for a search warrant with an affidavit of probable cause.

The application requested a warrant for "two vials of blood for DNA analysis and comparison purposes." March 14, 2007 warrant application, Exhibit B to defendants' memorandum. The accompanying affidavit of probable cause contained a description of the crime, referred to Huxley's

---

[6] Saunders also testified at the subsequent suppression hearing that he was "never out of the custody of the jurisdiction of the State." Notes of Testimony of August 25, 2008 Suppression Hearing, p. 21, l.20-22; p.23, l.14-23, Exhibit F to defendants' memorandum.

and Hatcher's statements and Officer Cassell's identification of plaintiff in the area, described the retrieval of physical evidence and the interview with plaintiff, and his prior criminal record. See March 14, 2007 affidavit of probable cause, Exhibit B to defendants' memorandum. With respect to DNA testing, paragraph 8 of the affidavit stated:

> Several pieces of clothing evidence and the toy gun were taken to the Pennsylvania State Police Lab in Bethlehem for processing. D.N.A. test will be performed on the items with Saunders as a suspect. Currently his D.N.A. profile is in the C.O.D.I.S. system. A sample of his blood is required to complete the testing process.

Id.

After the warrant was issued, plaintiff's blood was taken. Saunders N.T. at 60-64. The test did not exclude plaintiff from the pool of potential matches to the DNA found on the glove. Affidavit of Lisa Shutkufski, Forensic Scientist, Pennsylvania State Police, ¶ 7, Exhibit H to defendants' memorandum. However, plaintiff's motion to suppress the blood sample was granted by a judge of the Court of Common Pleas of Montgomery County upon hearing. Suppression Hearing N.T. at 17-19.

Thereafter, two further warrants were obtained on probable cause affidavits. Responding to the deficiencies noted at the suppression hearing, Borkowski amended paragraph 8 of the affidavit of probable cause in support of the applications as follows:

> Several pieces of the clothing evidence and the toy gun were taken to the Pennsylvania State Police lab in Bethlehem for processing. From the above mentioned gloves D.N.A. was obtained from them, which was then entered into a CODIS search. As a result, the DNA profile of a convicted offender (Gary Saunders, DOB: 10/27/1968, SID 1-79-57-34-1, FBI: 634020HA7, SSN# 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) from the state of Pennsylvania could not be excluded from the DNA mixture profile obtained from the yellow glove. A sample of his blood is required to complete the testing process.

December 16, 2008 Affidavit of Probable Cause, ¶ 8, Exhibit B to defendants' memorandum. According to plaintiff, on January 30, 2009, following service of the third warrant, his blood was forcibly drawn while he was held down. Saunders N.T. at 72-75.

The blood sample was submitted to the Pennsylvania State Police lab for analysis, with the following result:

> On 2/10/09, a known blood sample from Gary Saunders was forwarded to the DNA laboratory from the Serology Section of the laboratory. The sample (Item K2) was assigned to me. I began the analysis procedures on 4/13/09. I generated a DNA profile from the known blood sample and compared the profile to the evidence submitted previously (Lab Report B07-00118-3). The conclusions were issued in report B0700118-5 dated June 3, 2009. Once again, I concluded that the profile of Gary Saunders and multiple unknown individuals could not be excluded as potential contributors to the DNA profile obtained

    from the glove, and performed a statistical analysis on the rarity of the mixture profile.

Shutkufski Affidavit, ¶ 11.

Ultimately, the charges against plaintiff were nolle prossed. The record does not contain an explanation.

The issue in this case is whether the police had probable cause to believe that plaintiff had committed the crime for which he was being investigated and, if not, whether the police had qualified immunity to believe they had probable cause and were acting reasonably.

Viewing all of the evidence in the light most favorable to plaintiff, the complaint of illegal conduct on the part of the police is not sufficiently supported. Detective Borkowski engaged in the warrant process to obtain evidence for a criminal investigation, a proper purpose. At each stage, defendants' applications to a neutral judicial official were granted. This entitled them to believe they were acting reasonably and in accordance with the law. As such, even if they were not acting with probable cause, they are entitled to qualified immunity for their decisions and conduct in obtaining the blood samples.[7]

---

[7] "Qualified immunity exists when a reasonable officer could have believed his conduct was lawful in light of clearly established law. . . . The doctrine provides sufficient room for mistakes in the officers' judgment, and serves to protect 'all but the plainly incompetent or those who knowingly violate the law.'" Anderson v. City of Philadelphia, 2012 WL 3235163, at *5 (E.D. Pa., filed Aug. 8, 2012), citations omitted).

Accordingly, summary judgment is granted in defendants' favor and against plaintiff. An order accompanies this memorandum.

BY THE COURT:


 /s/ Edmund V. Ludwig 
Edmund V. Ludwig, J.